IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| LAWTON FREDERICK TYSON, § | |
| Petitioner, § | |
| § | |
| v. § | |
| § | CIVIL ACTION NO. 4:08-CV-002-A |
| NATHANIEL QUARTERMAN, Director, § | (Consolidated with 4:08-CV-044-A) |
| Texas Department of Criminal Justice, § | |
| Correctional Institutions Division, § | |
| Respondent. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner Lawton Frederick Tyson, TDCJ-ID #1193593, is a state prisoner in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Iowa Park, Texas.

Respondent Nathaniel Quarterman is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

#### C. FACTUAL AND PROCEDURAL HISTORY

In 2003, Tyson was convicted of five counts of sexual assault of a child in Tarrant County,

Texas, in case number 0899697R. (Clerk's R. at 3, 152) He was convicted of one count of aggravated sexual assault of a child in case number 0870880D. (Clerk's R. at 2A, 126) The two child complainants (one for each indictment) were sisters.

The Second District Court of Appeals of Texas affirmed the trial court's judgment in case number 0870880D, as well as the trial court's judgment as to Count One in case number 0899697R. *Tyson v. Texas*, 172 S.W.3d 172 (Tex. App.– Fort Worth 2005, pet. ref'd). The court of appeals reversed the judgment in case number 0899697R as to Counts Two through Five. Tyson filed a petition for discretionary review in the Texas Court of Criminal Appeals, which was refused, and he sought state postconviction habeas corpus review, to no avail. *Tyson v. Texas*, PDR No. 1278-05 & 1279-05; *Ex parte Tyson*, State Habeas Application Nos. WR-62,931-06 thru WR-62,931-08 & WR-62,931-10 thru WR-62,931-12. This federal petition for writ of habeas corpus followed.

### D. ISSUES

Tyson raises the following grounds for habeas relief:

(1) He was denied a fair trial because he was shackled in front of the jury (ground one);

(2) The grand jury and jury selection was unconstitutional (ground two);

(3) He is the victim of a double jeopardy violation (ground three);

(4) The court of appeals's ruling was improper (ground four);

(5) The trial court erred in its jury instructions (ground five);

(6) He was denied the right to challenge information given to the jury during deliberations (ground six);

(7) The state engaged in prosecutorial misconduct by barring him from access to the record and the outcry statement (grounds seven and eight);

(8) He received ineffective assistance of trial counsel due to counsel's failure to

2

have him examined for mental incompetency and to call character witnesses on his behalf (ground nine); and

(9) Three of his state writs were never ruled upon and their whereabouts are unknown (ground ten). (Petition at 7-8 & Insert)

### E. RULE 5 STATEMENT

Tyson abandoned certain unexhausted claims in his petition. (docket entries 36 & 39) Quarterman believes that Tyson has sufficiently exhausted his state remedies as to the remaining issues, enumerated above, as required by § 2254(b)(1).

### F. DISCUSSION

*Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

Further, federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, as the court did here, it is an adjudication on the merits, which is entitled to this presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

## 1. *Shackles*

Tyson claims his right to a fair trial was violated because he was shackled in open court. The state habeas court held a hearing by affidavit, whereupon trial counsel testified that it was the policy of the trial judge that all defendants in custody be shackled at the feet during trial. *Ex parte Tyson*, State Habeas Application No. WR-62,931-08, at 79. Counsel testified further that both counsel tables are designed to conceal this from the jury and that the jury is excused, if a defendant testifies, when the defendant walks to and from the defendant's table. According to counsel, the shackling of Tyson's feet outside the jury's knowledge had no affect whatsoever on the outcome of his trial. *Id.* Absent evidence that the jury was aware Tyson was shackled, the state habeas court agreed that Tyson was not prejudiced by the presence of the shackles and concluded that the use of the shackles did not violate Tyson's right to due process. *Id.* at 155.

Although constitutional due process generally militates against the routine use of visible shackles during the guilt phase of a criminal trial, the state trial court took steps to ensure that the jurors would not see Tyson in shackles in an effort to eliminate any prejudicial effect the restraints

4

might otherwise have had on the jury. *See Deck v. Missouri*, 544 U.S. 622, 631-32 (2005); *Chavez v. Cockrell*, 310 F.3d 805, 808-09 (5th Cir. 2002). Because the shackles were not visible to the jury, Tyson cannot show he was denied his constitutional right to a fair trial and the presumption of innocence.

### 2. *Jury Selection*

Tyson claims the grand jury and petit jury were unconstitutionally impaneled. He appears to challenge the "commissioner system" for venire or panel selection utilized in Tarrant County. County officials have an affirmative duty under the Sixth Amendment to develop and use a system that will result in a fair cross-section of the community being placed on jury rolls. *Avery v. Georgia*, 345 U.S. 559, 561 (1953). As in state court, Tyson analogizes Tarrant County's system to the Houston County venire selection procedure. However, he presents no relevant or persuasive evidence, statistical or otherwise, demonstrating the degree of underrepresentation or systematic exclusion of persons of his race or another identifiable group or how Tarrant County's procedure constitutes a system impermissibly susceptible to abuse and racial discrimination, *See Rose v. Mitchell*, 443 U.S. 545, 551 (1979); *Castaneda v. Partida*, 430 U.S. 482, 492-93 (1977); *Mosley v. Dretke*, 370 F.3d 467, 475-79 (5th Cir. 2004). Thus, he cannot demonstrate that he was denied fundamental fairness as a result of the jury selection employed by Tarrant County. *See Hobby v. United States*, 468 U.S. 339, 349-50 (1984). Bald assertions on a critical issue in a pro se habeas petition have no evidentiary value and are insufficient to support habeas relief. *See Rose v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

### 3. *Double Jeopardy*

Tyson claims he is the victim of a double jeopardy violation because the state appellate court

5

overturned only three of the five counts in the same indictment involving the same victim and the same transaction. First, Tyson's claim is factually incorrect. The Second Court reversed Tyson's convictions on counts two through five (four counts) in case number 0899697R, and remanded them for a new trial, because the counts were erroneously charged in the disjunctive. *Tyson*, 172 s.W.3d at 176-77. Second, the claim is frivolous. The Double Jeopardy Clause prohibits a state from attempting to punish the same offense twice. *See Witte v. United States,* 515 U.S. 389, 396 (1995). Double jeopardy does not bar separate prosecutions or punishments for distinct criminal acts against different victims during the course of the same criminal episode. *See Miller v. Turner,* 658 F.2d 348, 350-51 (5th Cir.1981). Tyson stands convicted of only one count of sexual assault of a child under 17 years of age against the older victim in case number 0899697R and one count of aggravated sexual assault of a child under 14 years of age against the younger victim in case number 0870880D. Each offense is a separate crime involving different victims, therefore double jeopardy is not implicated.

Tyson also appears to claim that the state appellate court's ruling was improper because only one sentence can be "received arising out of the same incident." For the reasons stated above, this claim is equally frivolous. Furthermore, Tyson's sentence in each instance, although the maximum, is within the range of punishment for the offense as determined by state law.

*4. Jury Instructions*

Tyson claims the state's misstatements of the law concerning probation denied him a fair trial. Although it is unclear, Tyson appears to challenge the following statements by the state during voir dire:

> And let me talk a little bit about probation so that everybody will know what that means and what that entails. The way probation works, let's say that the jury

6

decided ten years was an appropriate number and that they did recommend probation. So we're at probation. The sentence would be ten years, then the person would be placed on a period of supervision that the judge would set, let's say ten years. Okay. So you got a ten-year sentence that's probated for a term of ten years. For that ten year period of time if the defendant violated any condition on his probation, the judge could send him to prison for the whole ten. All right. The conditions could be as small as failing to show up for the monthly appointment with the probation department. That could get you sent to prison for ten years. Could be failing to pay the fee that's required to the probation if it can be proven that you have the money to pay it and you choose not to. Could be coming in or could be using alcohol. It can be committing any other crime, traffic ticket, whatever. Could be not attending your court ordered sex offender caseload counseling. Could be having more contact with the victim. There's many different ways that the judge could send that person to prison for a period of ten years. So that's the way probation works.
. . .

And there are a number of other conditions that can be placed on a person that's on probation. They can be sent to jail for a period of 180 days at the judge's discretion. They can be required to wear a G.P.S. monitor that monitors their whereabouts 24 hours a day, seven days a week. And then if they go outside of their allowed perimeters, over at the probation department, you know, the computer starts beeping. And that can be a violation of their probation which would get them sent to prison. They are basically house arrest. I mean, you could confine a person to their home if the situation warranted it. So there's -- the law does allow some methods to try and see to it that the community is protected by the defendant.

And another way they do it is unannounced visits to their home to see if they -- well see if they have any children in there for one. To see if they have any prohibited substance, alcohol or drugs. And they're to have no direct contact with any child under the age of 17 or that can get them sent to prison. (2Reporter's R. at 58-59, 62)

He also appears to challenge the following statement by the state during closing argument:

And you have a great opportunity, okay. You have the opportunity to make the world -- because, *he could travel anywhere*. If he got probation *he could, you know, take off to anywhere*, so I say the world. You got the opportunity to make the world a safer place by segregating this person who's a predator on children from other children. . . . (4Reporter's R. at 56, emphasis added)

Where purported misstatements of the law or improper prosecutorial argument is asserted as a basis for habeas relief, the relevant question is whether the prosecutor's comments so infected

the trial with unfairness as to make the resulting conviction a denial of due process. *Darden v. Wainwright,* 477 U.S. 168, 181 (1987). The state habeas court found that Tyson had failed to present evidence that the jury did not understand the restraints of probation. (State Habeas R. at 214-15) It further found that (1) a reasonable interpretation of the state's argument was that being on probation would not physically prohibit Tyson from taking off and going somewhere else and (2) Tyson had failed to prove the jury thought the conditions of his probation would be that he could legally go anywhere. Thus, the state court concluded Tyson had not established a due process violation. The state court's determination is not contrary to, or involve an unreasonable application of, clearly established federal law nor does it appear to be based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The alleged misstatements and comments do not rise to the level of a constitutional violation.

## 5. *Information Given to Jury During Deliberations*

Tyson claims he was denied the right to challenge information given to the jury during deliberations. The record reflects the jury sent a note to the trial court requesting "the evidence" and a T.V. be sent in while deliberating guilt/innocence. (Clerk's R. at 141) Under state law, "[t]here shall be furnished to the jury upon its request any exhibits admitted as evidence in the case." TEX. CODE CRIM. PROC. ANN. art. 36.25 (Vernon 2006). The state habeas court rejected Tyson's claim because the information given to the jury included exhibits properly admitted into evidence at his trial, to which he had no right to object. (3Reporter's R. at 56) Tyson has not shown the state court's reliance on state law is contrary to clearly established federal law on the issue.

## 6. *Prosecutorial Misconduct*

Tyson claims the state engaged in prosecutorial misconduct by barring him from access to

the record, most notably the outcry statement, until after trial. As it pertains to this claim, Tyson's trial counsel testified as follows:

> [Tyson] complains that he was not provided with a copy of any outcry statement until after trial. [Tyson] was never provided a copy of any outcry statement or any document in the State's files that was provided to me pursuant to the Tarrant County District Attorney's Office policy that allows only the attorney of record to have a copy of the State's files on the strict condition that none of the material is furnished to the client or his family. This is the Tarrant County District Attorney's Office policy, and if it is violated, then all of the State's files will be closed to me on all of my cases. I did provide [Tyson] with a copy of all of the motions that I filed in his cases, and he of course had copies of both indictments. I discussed the State's evidence with him at length, reading from the incident reports and the statements of the two girls. However, the Tarrant County District Attorney's Office policy forbids me to provide him with copies of these other documents. (8State Habeas R. at 79)

The constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense nor has the Supreme Court held that the Constitution demands an open file policy. *See Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995); *United States v. Bagley*, 473 U.S. 667, 675 (1985). Tyson has not demonstrated that he had a constitutional right to a personal copy of the outcry statement or that he was denied access to the state's records or the outcry statement as his counsel was permitted to copy 185 pages of the state's files in his cases and was provided a copy of the outcry statement. (*Id.* at 72)

*7. Ineffective Assistance of Counsel*

Tyson claims he received ineffective assistance of trial counsel because counsel failed to have him examined for mental competency and to call a mental health expert and character witnesses on his behalf. A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's

performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

Based largely on counsel's affidavit, and applying the familiar *Strickland* standard, the state habeas court entered findings refuting these allegations. (State Habeas R. at 149-52) *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Contrary to Tyson's allegation, counsel requested on two separate occasions that the court appoint a mental health expert to examine Tyson for competency, and in both instances the experts concluded that, although Tyson suffers from bi-polar disorder, he was mentally competent to stand trial. (Clerk's R. at 77-78, 81-82, 124; State Habeas R. at 149) Furthermore, ineffective-assistance claims based upon uncalled witnesses are not favored because the presentation of witness testimony is essentially strategy, and thus within the trial counsel's domain, and speculations as to what these witnesses would have testified is too uncertain. *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985). Claims of uncalled witnesses should be rejected unless the petitioner demonstrates prejudice. *Id.* To demonstrate the requisite prejudice, a petitioner must show not only that the testimony would have been favorable, but also that the witness would have testified at trial. *Id.*

Tyson wholly fails to meet these requirements. Moreover, he was able to testify regarding his mental illness and, given the overwhelming evidence of his guilt, it is improbable that the testimony of character witnesses would have changed the jury's verdict or resulted in a less severe punishment. Thus, deferring to the state court's findings, the state courts' application of *Strickland*'s attorney-performance standard was reasonable.

### 8. State Habeas Proceedings

Tyson claims during the state habeas proceedings that three of his state writs were not ruled upon and that the whereabouts of the writs are unknown. Alleged infirmities or defects in a state habeas proceeding are not cognizable on federal habeas review. *See Rudd v. Johnson,* 256 F.3d 317, 319-20 (5th Cir. 2001); *Trevino v. Johnson,* 168 F.3d 173, 180 (5th Cir. 1999). "That is because an attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself." *See Rudd*, 256 F.3d at 320.

### 9. Evidentiary Hearing

Tyson requests an evidentiary hearing on the merits of his claims. The Texas Court of Criminal Appeals denied Tyson's state habeas application without written order. As previously noted, this ruling constitutes an adjudication of his claims on the merits and is entitled to the presumption of correctness. *See Bledsue v. Johnson*, 188 F.3d 250, 257 (5th Cir.1999); *May v. Collins*, 955 F.2d 299, 311 (5th Cir. 1992); *Ex parte Torres*, 943 S.W.2d at 472. Further, if a petitioner fails to develop a factual basis for a claim in state court, a federal habeas court shall not conduct an evidentiary hearing on the claim unless the claim relies on a new rule of constitutional law or on "a factual predicate that could not have been previously discovered through the exercise of due diligence," and the facts "would be sufficient to establish by clear and convincing evidence" the petitioner's actual innocence. 28 U.S.C. § 2254(e)(2); *Williams v. Taylor*, 529 U.S. 420, 434-37 (2000). Tyson has not met this burden. Thus, an evidentiary hearing is not warranted.

In conclusion, Tyson has failed to demonstrate that the state courts' determination of his claims is contrary to or involves an unreasonable application of federal law or appears based on an unreasonable determination of the facts in light of the record as a whole. Thus, the state courts'

adjudication of the claims is entitled to deference and the presumption of correctness.

## II. RECOMMENDATION

Tyson's petition for writ of habeas corpus should be DENIED.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within ten (10) days after the party has been served with a copy of this document. The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until January 22, 2009. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(B)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual finding or legal conclusion accepted by the United States District Judge. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc op. on reh'g); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).

## IV. ORDER

Under 28 U.S.C. § 636, it is ORDERED that each party is granted until January 22, 2009, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ORDERED that if objections are filed and the

opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED December 18, 2008.

                                                           /s/    Charles Bleil
                                                   CHARLES BLEIL
                                                   UNITED STATES MAGISTRATE JUDGE